966 P.2d 637

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Loretta T. SAWYER, Defendant–Appellant.**

**No. 20697.**

Supreme Court of Hawai'i.

Oct. 15, 1998.

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

RAMIL, Justice.

Defendant-appellant Loretta T. Sawyer appeals from her conviction of attempted murder in the second degree in violation of Hawai'i Revised Statutes (HRS) §§ 705–500 and 707–701.5 (1993).[1] Defendant raises five points of error on appeal, the dispositive issue being whether the trial court erred in failing, *sua sponte*, to give a mitigating defense instruction on attempted manslaughter resulting from extreme mental and emotional disturbance (EMED manslaughter). Because the record is devoid of any evidence supporting an EMED manslaughter instruction and because we overrule *State v. Warner*, 58 Haw. 492, 573 P.2d 959 (1977), insofar as it automatically required an EMED manslaughter instruction when a defendant asserted self-defense, we hold that the trial court did not err in this regard.

## I. BACKGROUND

A jury trial was held on March 5, 1997. The prosecution presented the following evidence. On September 4, 1995, at approximately 11:20 p.m., police were dispatched to investigate a disturbance at Kapīolani Park. When they arrived, they found Angela Hammond (Hammond) bleeding profusely from multiple wounds to her face, neck, and head. The injuries appeared to have been inflicted with a broken vodka bottle. Subsequent medical treatment revealed that Hammond's blood alcohol level was .31.

Hammond testified that, at the time of the attack, she was an alcoholic living in Kapīolani Park. She, her family, and some of her friends, including Defendant, usually drank alcohol together in the park. On the date of the incident, she and Defendant had been drinking all day long. Late in the afternoon, the two women and another friend went to a nearby ABC store, purchased a fifth of vodka, and returned to the park.

At some point during the evening, Hammond accused Defendant of stealing Hammond's mother's food stamps. According to Hammond, Defendant picked up the vodka bottle and hit her. The pair began to fight and Hammond remembered "throwing blows," being struck by Defendant, and getting cut.

---

**1.** Hawai'i Revised Statutes (HRS) § 705–500 (1993) provides:

**Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
  (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
  (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
  (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
  (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.
  HRS § 707–701.5 (1993) provides in relevant part that "a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person."

During his direct examination of Hammond, the deputy prosecuting attorney (DPA) began to show Hammond fourteen color photographs, previously entered into evidence, of her injuries, and had her explain them. Both Hammond and Defendant began to cry. Defense counsel objected on the bases that: (1) the examination was intended to bring Hammond to tears and to elicit the jury's sympathy; and (2) the second presentation was cumulative. The prosecution argued that: (1) the examination was for Hammond's "well-being," claiming that it was "part of the healing process[;]" (2) the photographs were necessary to show the extent and gravity of the injuries, inasmuch as Hammond had healed and had plastic surgery between the day she was injured and the trial; and (3) the photographs also were relevant to show that Defendant's intent was to cause Hammond's death and not to inflict the injuries in self-defense. The trial court ruled that the photographs were not cumulative and were necessary to show the extent of Hammond's injuries. Additionally, the trial court instructed the jury not to be swayed by sympathy, passion, or prejudice.

Other witnesses testified that they saw both women throwing blows. While no one knew who had thrown the first punch, one witness stated that, immediately following the incident, Defendant told him that she had not meant to hurt Hammond.

Defendant testified as follows. On the night in question, she and Hammond were very intoxicated. When Defendant began to drink the bottle of vodka, Hammond became enraged and hit Defendant in the face with a closed fist. Defendant put the bottle down and the women began to punch each other. At some point during the fight, the vodka bottle broke. Defendant picked it up and pushed Hammond away, unaware that she was cutting Hammond. Defendant did not testify, directly or indirectly, that she was acting under any mental or emotional disturbance, nor did her attorney ask her, directly or indirectly, if she were acting under any mental or emotional disturbance.

During the settling of jury instructions, defense counsel objected to the prosecution's proposed instruction no. 1 on the offense of attempted murder in the second degree, arguing that the instruction failed both to state the correct law and to define deadly force. *See infra* note 5 and part III.B. The prosecution also submitted an attempted "EMED manslaughter" instruction but later withdrew it without defense objection.[2] Additionally, the prosecution submitted proposed supplemental instruction no. 1 on self-induced intoxication without objection by Defendant's attorney. *Id.* The trial court ultimately instructed the jury on self-defense but not attempted "EMED manslaughter."

During closing arguments, the DPA told the jury not to "let the law try to cloud you out with all of these instructions when you look at it. You just come down to common sense." The defense objected, and the court instructed the jury that the law had to be followed.

The jury found Defendant guilty as charged. She was sentenced to life imprisonment with the possibility of parole. Thereafter, Defendant filed this timely appeal.

On appeal, Defendant claims: (1) that the trial court committed plain error when it failed, *sua sponte*, to instruct the jury on attempted EMED manslaughter;[3] (2) that the trial court committed plain error

---

2. On March 19, 1997, after the verdict was read, the following discussion took place among the court, the deputy prosecuting attorney (DPA), and the deputy public defender (DPD):

    [DPA]: And one other matter, your honor. I believe during the instruction period I did withdraw the attempted murder o[r] extreme emotional disturbance and—
    [DPD]: Attempted manslaughter.
    [DPA]: Excuse me, attempted manslaughter or extreme mental emotional disturbance and I believe it was counsel [who] did not want that instruction in. So I want that placed on the record that was, you know, a decision to leave that instruction out.
    [DPD]: That is correct, your honor. I don't think there was a rational basis in the evidence for extreme emotional disturbance.
    THE COURT: All right. I thought we had that on record.

3. Defendant argues that the trial court "erred" in failing to give the instruction. Defense counsel failed to raise this issue before the trial court or to object to the State's decision to withdraw its extreme mental or emotional disturbance (EMED) instruction. *See State v. Fox,* 70 Haw.

when it instructed the jury on the elements of attempted second degree murder; (3) that the trial court committed plain error when it instructed the jury on self-induced intoxication;[4] (4) that the trial court erred when it failed to instruct the jury on the complete definition of "deadly force;"[5] and (5) that the prosecutor's closing arguments[6] and "improper" display of photographs[7] deprived her of her right to due process and a fair

46, 56, 760 P.2d 670, 676 (1988); *State v. Pinero*, 75 Haw. 282, 292–93, 859 P.2d 1369, 1374 (1993). Thus, Defendant argues that the trial court committed plain error.

4. We addressed this very issue in *State v. Birdsall*, 88 Hawaiʻi 1, 960 P.2d 729 (1998). Therein, we reaffirmed *State v. Souza*, 72 Haw. 246, 248–49, 813 P.2d 1384, 1386 (1991). *See Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 2020 n. 4, 2024, 2031, 2033 n. 2, 135 L.Ed.2d 361 (1996) (citing with approval *State v. Souza* and HRS § 702–230 (1993), as a state statute that properly redefined the *mens rea* element of a crime and did not shift the state's burden to prove the intent element beyond a reasonable doubt). Therefore, Defendant's argument, challenging HRS § 702–230 as unconstitutional, is without merit.

5. Defendant argues that the trial court's failure to include the entire definition of deadly force was prejudicial and that the jury could have found that Defendant did not intend to employ deadly force. Defendant argued that the trial court's instruction should have included the following:

Intentionally firing a firearm in the direction of another person or in the direction which another person is believed to be constitutes deadly force. A threat to cause death or serious bodily injury, by the production of a weapon or otherwise, so long as the actor's intent is limited to creating an apprehension that the actor will use deadly force, if necessary, does not constitute deadly force. HRS § 703–300 (1993).

It is well settled that a trial court must correctly instruct the jury on the law and insure that jury instructions are not prejudicially insufficient, erroneous, inconsistent, or misleading. *See State v. Arceo*, 84 Hawaiʻi 1, 11, 928 P.2d 843, 853 (1996). So long as the instructions considered as a whole correctly state the law and are not inconsistent or misleading, "the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute grounds for reversal." *Pinero*, 75 Haw. at 292, 859 P.2d at 1374.

Both Defendant and Hammond testified that the weapon used by Defendant was a vodka bottle. Neither testified or proposed that either the Defendant or Hammond was merely threatening the other. Therefore, the court properly excluded those portions of the statute's definition that were irrelevant and/or misleading. Defendant's argument is without merit.

6. In reviewing allegations of prosecutorial misconduct, reversal of a conviction occurs only where the conduct deprived the defendant of a fair trial and affirmatively appears to have prejudicially affected his substantial rights. *State v. Clark*, 83 Hawaiʻi 289, 926 P.2d 194, *reconsideration denied*, 83 Hawaiʻi 545, 928 P.2d 39 (1996). Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of "whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Balisbisana*, 83 Hawaiʻi 109, 114, 924 P.2d 1215, 1220 (1996) (quoting *State v. Holbron*, 80 Hawaiʻi 27, 32, 904 P.2d 912, 917, *reconsideration denied*, 80 Hawaiʻi 187, 907 P.2d 773 (1995)) (citations and internal quotation marks omitted); *see also State v. Sanchez*, 82 Hawaiʻi 517, 528, 923 P.2d 934, 945 (App.), *cert. denied*, 84 Hawaiʻi 127, 930 P.2d 1015 (1996) (citation omitted). Factors considered are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant. *State v. Samuel*, 74 Haw. 141, 148, 838 P.2d 1374, 1378 (1992) (citation omitted).

Defendant argues that the DPA's statement—"[D]on't let the law try to cloud you out with all these instructions when you look at it. You just come down to common sense."—was prosecutorial misconduct. The trial court effectively sustained the DPD's objection and immediately cured any error by stating that the "law has to be followed and it's the jury's standpoint."

The DPA's statement was improper in the extreme and should not be repeated; however, the statement appears to have been an attempt by the DPA to encourage the jury to use its common sense. Nevertheless, the trial court cured any prejudice by immediately instructing the jury that the law had to be followed. *See Samuel*, 74 Haw. at 148, 838 P.2d at 1378. We therefore disagree that the DPA's misstatement deprived Sawyer of a fair trial.

7. "Evidentiary decisions based on [Hawaiʻi Rules of Evidence (HRE)] Rule 403, which require a 'judgment call'[,] ... are reviewed for an abuse of discretion.... The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards the rules or principles of law or practice to the substantial detriment of a party litigant." *Tabieros v. Clark Equip. Co.*, 85 Hawaiʻi 336, 351, 944 P.2d 1279, 1294 (1997) (quoting *Arceo*, 84 Hawaiʻi at 11, 928 P.2d at 853) (citations omitted). HRE 403 provides:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the dan-

trial under the state and federal constitutions. Because points three, four, and five are without merit, we confine our discussion to points one and two.

## II. *STANDARDS OF REVIEW*

### A. *Standard of Review for Jury Instructions*

■ "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853 (citations and internal quotation marks omitted); *see also State v. Kupau*, 76 Hawai'i 387, 393, 879 P.2d 492, 498 (1994). If the instructions requested by the parties are inaccurate or incomplete but are necessary "in order for the jury to 'have a clear and correct understanding of what it is that they are to decide[,]'" then the trial court has the duty either to correct any defects or to fashion its own instructions. *State v. Okumura*, 78 Hawai'i 383, 411, 894 P.2d 80, 108 (1995) (citations omitted); *accord State v. Kinnane*, 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995).

■ Nevertheless, the "trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case." *State v. Apao*, 59 Haw. 625, 645, 586 P.2d 250, 263 (1978), *subsequent resolution*, 66 Haw. 682, 693 P.2d 405 (1984). Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a

whole that the error was not prejudicial. *State v. Robinson*, 82 Hawai'i 304, 310, 922 P.2d 358, 364 (1996). If that standard is met, however, "the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal." *Pinero*, 75 Haw. at 292, 859 P.2d at 1374. Whether a jury instruction accurately sets forth the relevant law is a question that this court reviews *de novo*. *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994).

### B. *Standard of Review for Plain Error*

■ As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error. *Pinero*, 75 Haw. at 291–2, 859 P.2d at 1374. If the substantial rights of the defendant have been affected adversely, the error will be deemed plain error. *Id.* Further, this Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights. *State v. Fox*, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988); *see also State v. Kahalewai*, 56 Haw. 481, 491, 541 P.2d 1020, 1026 (1975).

## III. *DISCUSSION*

### A. *The Trial Court Properly Instructed the Jury on Sawyer's Defenses when It Did Not Provide an Attempted EMED Manslaughter Instruction.*

Defendant first contends that the trial court erred when it failed to give an attempt-

---

ger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The DPA presented photographs of the victim's wounds on two separate occasions—first, to verify the reasons why the technician took the photographs and, second, to have the victim explain the original wounds and the plastic surgery she underwent to repair them. The trial court ruled that the photographs were relevant, that the second presentation was not cumulative because it was for a different yet valid reason, and that it was not unfairly prejudicial, even though it caused both the victim and Defendant to cry in front of the jury. Furthermore, the court instructed the jury in the following manner.

You must not be influenced by pity for the defendant or by passion or prejudice against the defendant. Both the prosecution and the defendant have a right to demand, and they do demand and expect, that you will conscientiously and dispassionately consider and weigh all of the evidence and follow these instructions, and that you will reach a just verdict. It is presumed that the jury adhered to the court's instruction. *See State v. Amorin*, 58 Haw. 623, 629, 574 P.2d 895, 899 (1978). Courts, traditionally, have great discretion in admitting such evidence. *See Tabieros*, 85 Hawai'i at 350–51, 944 P.2d at 1294. Therefore, we cannot accept Defendant's argument that the prosecution's use of the photographs denied her a fair trial.

ed EMED manslaughter instruction *sua sponte*. In response, the prosecution argues that defense counsel waived the EMED manslaughter instruction when she admitted that "the record d[id] not reflect any evidence on t[he] issue."

As a preliminary matter, we note that, in *State v. Holbron,* we held that

a defendant charged with attempted murder, in violation of HRS §§ 705–500 and 707–701.5, may be convicted of attempted manslaughter, in violation of HRS §§ 705–500 and 707–702(2), by virtue of "extreme mental or emotional disturbance *for which there is a reasonable explanation.*" In this respect, we agree with the ICA's statement in *State v. Nizam,* 7 Haw.App. 402, 410, 771 P.2d 899, 904, *reconsideration denied,* 7 Haw.App. 668, 807 P.2d 54, *cert. denied,* 70 Haw. 666, 796 P.2d 502 (1989), that "a defendant charged with attempted murder [can] . . . rely on the defense of extreme mental or emotional disturbance afforded by HRS § 707–702(2)[.]"

80 Hawai'i 27, 45, 904 P.2d 912, 930, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) (brackets in original) (emphasis added).

■ The record in this case, however, is devoid of any evidence that would support a defense of EMED. Thus, Defendant was not entitled to such an instruction. *See State v. Kaiama,* 81 Hawai'i 15, 26, 911 P.2d 735, 746 (1996) (holding that, as a matter of law, EMED instruction, which was not supported by the evidence, was not required).

■ Defendant, however, relies upon *State v. Warner,* 58 Haw. 492, 573 P.2d 959 (1977), in asserting that she was, nevertheless, entitled to such an instruction. The prosecution also relies upon *Warner* to buttress its arguments. The prosecution contends that the on-the-record, post-verdict exchange, *see supra* note 2, functioned as a waiver as set forth in *Warner.* The prosecution also claims that defense counsel's failure to request an EMED instruction, in conjunction with the post-verdict "waiver," constituted trial strategy. Because we overrule *War-*

ner insofar as it automatically required an EMED manslaughter instruction when a defendant asserted self-defense, we answer Sawyer's question in the negative.

In *Warner,* the court addressed a single issue: whether the trial court erred in refusing to give an EMED manslaughter instruction in a murder case,[8] even though it gave one on self-defense. *Id.* at 493–96, 573 P.2d at 960–62. At trial, Warner, the defendant, testified that he had been living with his girlfriend, Helen Crawley, and a good friend of his, Thomas Boykin. Both Crawley and Boykin were unemployed and, for the following year-and-a-half, Warner furnished them both with "food, clothing, and other necessities of life." *Id.* at 493, 573 P.2d at 960–61. In January 1975, Warner planned to return to the mainland for two months to be discharged from the military. *Id.* at 494, 573 P.2d at 961. When he returned four months later, he discovered that Crawley and Boykin had become romantically involved, moved to another apartment, and were in possession of and using a number of Warner's personal belongings and appliances. *Id.* Warner, nevertheless, moved in with the couple and resumed his relationship with Crawley. Shortly thereafter, however, Crawley decided to return to Boykin, "caus[ing] considerable friction" among the three. *Id.*

One evening, they quarreled several times. *Id.* During one argument, Warner stated that he wished "to move out of the apartment and take all his belongings with him." *Id.* At trial, Warner claimed that Boykin would not let him take back his possessions without a fight. *Id.* Warner retrieved an unloaded pistol from a neighbor and confronted Boykin. *Id.* Boykin refused to back down and, when Boykin reached for the pistol, Warner left the apartment building with the weapon. Warner returned later that evening. He claimed that, as he reached the top of the stairway, Boykin told Warner that he was going to kick Warner's "ass." *Id.* Boykin then began to move toward Warner and started to swing at him. Warner stepped back and, afraid Boykin would knock him down the stairs, "panicked," pulled the re-

---

**8.** As the *Warner* court noted, at the time there were no distinct degrees of murder in Hawai'i.

*Warner,* 58 Haw. at 492 n. 1, 573 P.2d at 960 n. 1.

volver from his pocket, and shot Boykin. *Id.* at 494–95, 573 P.2d at 961.

On direct examination, Warner testified that he was

"under a lot of strain" at that time, which stemmed in part from his concern over finding another place to live, as well as the manner in which he, Boykin and Crawley had been quarreling so much with each other.

On cross-examination, appellant responded that the only reason he shot Boykin was self-defense. However, on redirect, appellant testified that at the time he pulled the trigger, he was feeling "kind of frustrated[,]" because after all that he had done to provide for Boykin and Crawley, Boykin was now trying to "jump on" him. Appellant further indicated that at the moment he shot Boykin, appellant's thoughts went to why, after all the financial support that he had given to Boykin and Crawley, "they would do this to me, and now they don't want me to have the things that belong to me."

*Id.* at 495, 573 P.2d at 961.

The trial court instructed the jury regarding self-defense, but declined to give Warner's instructions on manslaughter, which included an EMED manslaughter instruction. *Id.* at 495 n. 6, 573 P.2d at 962 n. 6. On appeal, Warner argued that, even though the jury did not find he had acted in self-defense, sufficient evidence existed to support an EMED manslaughter instruction.

After viewing the evidence in the light most favorable to the appellant, the *Warner* court agreed and explained that it had

set out appellant's testimony in some detail in order to depict the circumstances which may have contributed to a disturbed state of mind on the part of appellant.... At the least, the conflict in appellant's testimony as to his state of mind at the time of the shooting presented a question for the jury to resolve. *When there is any evidence, no matter how slight, that raises the question whether the offense is murder or manslaughter, the trial court is bound to submit the issue to the jury for its determination.*

. . . .

Finally, *while it is true that appellant relied mainly on a theory of self-defense at trial, this constituted no bar to the presentation to the jury of instructions on the theory of manslaughter. So long as the testimony fairly raises the issue of manslaughter, it is irrelevant that issue was not explicitly offered as a defense theory during the trial.*

*Id.* at 498–99, 573 P.2d at 963 (citations and internal quotation marks omitted) (emphases added). The *Warner* court, relying on *Morgan v. State*, 536 P.2d 952, 956 (Okla.Crim. 1975), went further to hold that:

[W]e ... find ourselves somewhat less than satisfied with the necessity of carrying out case-by-case fact-finding in order to determine whether instructions on manslaughter should also have been given when the issue of self-defense has been presented in a murder prosecution.

. . . .

It requires no lengthy analysis on our part to conclude, as did the court in *Morgan,* that elements of manslaughter are present to at least some degree in cases where self-defense is reflected in the evidence. Simply put, actions taken in self-defense may indeed be committed while the defendant is subject to a certain degree of terror, resentment, rage or anger, which in turn may be of sufficient magnitude to constitute the "extreme mental or emotional disturbance" which would reduce murder to manslaughter.

. . . .

*Therefore, we hold that in all murder prosecutions hereafter tried in this state, where the evidence necessitates an instruction on self-defense, the trial court shall also give instructions to the jury on the charge of manslaughter. The manslaughter instructions need not be requested by the defendant. However, the sole exception to this rule shall be that if the defendant objects to the giving of the instructions of manslaughter on the basis that the record does not reflect any evidence on this issue, and the trial court agrees with the defendant, no such manslaughter instructions shall be given.*

*Id.* at 499–01, 573 P.2d at 964–65 (emphases added).

This court recognizes that "the ultimate responsibility properly to instruct the jury ... [lies] with the circuit court and *not* with trial counsel." *Kupau,* 76 Hawai'i at 395, 879 P.2d at 500 (quoting *Briones v. State,* 74 Haw. 442, 472–73, 848 P.2d 966, 980 (1993) (Levinson, J., concurring)) (emphasis, ellipses, and brackets in original). "Our cases have firmly established that 'a defendant is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be.'" *Kaiama,* 81 Hawai'i at 24, 911 P.2d at 744 (quoting *State v. Maelega,* 80 Hawai'i 172, 178–79, 907 P.2d 758, 764–65 (1995) (citation omitted)) (emphasis in original); *see also State v. Russo,* 69 Haw. 72, 76, 734 P.2d 156, 158 (1987) (citation omitted). However, this court has also noted that "where evidentiary support for [an] asserted defense, or for any of its essential components, is clearly lacking, it would not be error for the trial court to refuse to charge on the issue or to instruct the jury not to consider it." *State v. Moore,* 82 Hawai'i 202, 210, 921 P.2d 122, 130 (1996) (citation omitted); *see also Russo,* 69 Haw. at 76, 734 P.2d at 158; *Warner,* 58 Haw. at 498–99, 573 P.2d at 963.

Here, the defense in question was the mitigating defense of attempted EMED manslaughter. "EMED manslaughter ... is[ ] the *intentional* [or knowing] killing of another 'while under the influence of a reasonably induced emotional disturbance causing a temporary loss of normal self-control.'" *State v. Knight,* 80 Hawai'i 318, 326, 909 P.2d 1133, 1141 (1996) (quoting *Holbron,* 80 Hawai'i at 42, 904 P.2d at 927) (emphasis added). Indeed, we stated that "a killer's self-control, or lack of it, at the time of the killing is a significant, even determining, factor in deciding whether the killer was under the influence of an extreme emotional disturbance such that his conduct would fall under HRS § 707–702(2)." *State v. Matias,* 74 Haw. 197, 204, 840 P.2d 374, 378 (1992).

We have stated that "the defendant must satisfy a subjective/objective test" in proffering a "reasonable explanation" in accordance with HRS § 707–702(2). *Kaiama,* 81 Hawai'i at 26, 911 P.2d at 746 (citing *State v. Seguritan,* 70 Haw. 173, 174, 766 P.2d 128, 129 (1988)); *see also Russo,* 69 Haw. at 78, 734 P.2d at 159. First, in satisfying the subjective portion, the record must reflect the circumstances as the defendant believed them to be. Second, in satisfying the objective portion, the record must support "a reasonable explanation or excuse for the actor's disturbance." *Kaiama,* 81 Hawai'i at 26, 911 P.2d at 746 (quoting *Russo,* 69 Haw. at 77–78, 734 P.2d at 159).

Much confusion has arisen over whether the court or the jury determines the reasonableness of the defendant's explanation or excuse. We hold that the trial court determines whether or not the record reflects *any* evidence of a subjective nature that the defendant acted under a loss of self-control resulting from extreme mental or emotional disturbance. If the record does not reflect *any* such evidence, then the trial court shall properly refuse to instruct the jury on EMED manslaughter. However, if the record reflects *any* evidence of a subjective nature that the defendant acted under the influence of extreme mental or emotional disturbance, then the issue must be submitted to the jury, and the trial court should instruct the jury on EMED manslaughter. The jury then decides whether or not the prosecution has disproved the mitigating EMED manslaughter defense beyond a reasonable doubt.

As the facts of this case demonstrate, it is not difficult to conceive of a situation where a defendant exerts deadly force in self-defense, without a loss of self-control due to the influence of extreme mental or emotional disturbance. Accordingly, *Warner*'s broad generalization, *i.e.,* that an EMED manslaughter instruction is warranted any and every time a defendant charged with murder asserts self-defense, is simply wrong, and we overrule *Warner* in this regard. Although we recognize the *Warner* court's concerns with efficiency and economy, justice demands a case-by-case analysis of certain legal issues,

rather than an application of an oversimplified, blanket rule.

As stated, the record was devoid of *any* evidence that Defendant acted while under the influence of a reasonably induced loss of self-control due to extreme mental or emotional disturbance. Further, defense counsel conceded, "I don't think there was a rational basis in the evidence for extreme emotional disturbance," which a thorough review of the record confirms. Accordingly, the trial court did not err when it instructed the jury on self-defense, without instructing the jury on attempted EMED manslaughter.

### B. *The Trial Court Properly Instructed the Jury on Attempted Murder in the Second Degree.*

Defendant next argues that the trial court's instruction on attempted murder in the second degree was incomplete and confusing, because it "substantially deviated" from Hawai'i Standard Jury Instructions Criminal (HAWJIC) 14.02A. This argument is without merit.

The trial court gave the following two instructions. State's proposed instruction no. 1, to which the defense objected, provided:

In the indictment, the defendant ... is charged with the offense of Attempted Murder in the Second Degree.

*A person commits the offense of Attempted Murder in the Second Degree if she intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause the death of another person.*

There are two material elements of the offense of Attempted Murder in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about the 4th day of September 1995, in the City and County of Honolulu, State of Hawaii, the defendant ... intentionally engaged in conduct; and

2. That the defendant['s] ... conduct was a substantial step in a course of conduct intended or known to cause the death of Angela Hammond.

(Emphasis added.) State's proposed instruction no. 2, given by agreement, provided that

A person is guilty of an attempt to commit a crime *if* she intentionally engages in conduct which, *under the circumstances as she believes them to be,* constitutes a substantial step in a course of conduct intended to culminate in her commission of the crime.

When causing a particular result is *an* element of the crime, a person is guilty of an attempt to commit the crime, *if* acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, she intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

*Defendant's conduct shall constitute a substantial step in a course of conduct, if it is strongly corroborative of intent to commit the offense charged.*

(Emphases added.)

In comparison, HAWJIC 14.02A states in pertinent part:

A person commits the offense of Attempted Murder in the Second Degree if he/she intentionally engages in conduct which, *under the circumstances as he/she believes them to be,* is a substantial step in a course of conduct intended or known to cause the death of another person.

There are two material elements of the offense of Attempted Murder in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That, on or about (date), in the [City and] County of (name of county), the Defendant intentionally engaged in conduct; and

2. That the conduct, under the circumstances Defendant believed them to be, was a substantial step in a course of conduct intended or known to be practically certain by the Defendant to cause the death of another person.

HAWJIC 14.02A, *reprinted in Hawai'i Court Rules, State and Federal* 742 (1997) (some emphasis added and some in original).

Specifically, Defendant claims that the instruction the trial court gave: (1) failed to direct the jury to find that Defendant intended to cause Hammond's death; (2) did not require that the jury examine her conduct under the circumstances as she believed them to be at the time; and (3) "virtually t[old] the jury to find that the defendant's conduct is a substantial step rather than cautioning the jury that conduct *cannot* be a substantial step *unless* the jury finds that such conduct is strongly corroborative of intent." (Emphases in original.)

First, Defendant's argument that deviation from the HAWJIC is prejudicial *per se* is disingenuous. The introduction to the instructions clearly states that "nothing herein shall be construed as an approval by the Supreme Court of the State of Hawai[ʻi] of the substance of any of said instructions." HAWJIC(1991); *see also* HAWJIC, *reprinted in Hawaiʻi Court Rules, State and Federal* 627 (1997). Additionally, "approval for publication and distribution is not and shall not be considered by this court or any other court to be an approval or judgment as to the validity or correctness of the substance of any pattern instruction." HAWJIC, *reprinted in Hawaiʻi Court Rules, State and Federal* 627 (1997). A failure, therefore, to strictly conform to HAWJIC 14.02A does not automatically result in incomplete and confusing jury instructions.

Second, the instruction given in the instant case did, in fact, inform the jury regarding the requisite state of mind necessary to convict Defendant of attempted second degree murder. The elements of the charged crime, as provided in State's instruction no. 1, directed the jury to determine whether Defendant's conduct "was intended or known to cause the death of" Hammond.

Third, as in *State v. Cullen*, 86 Hawaiʻi 1, 8, 946 P.2d 955, 962 (1997), the jury instruction was patterned after HRS § 705–500(2), which provides:

> When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of

the crime, *the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.*

*See id.* at 12, 946 P.2d at 966 (emphasis in original). "HRS § 700–500(2) applies directly to attempted murder, wherein 'causing a particular result,' *i.e.,* the result of the actor's conduct *is* a material element." *Id.* (emphasis in original). Thus, the instant jury instructions contained the qualifying language that Defendant now claims was omitted.

It is well settled that jury instructions are to be viewed as a whole. *Cullen,* 86 Hawaiʻi at 8, 946 P.2d at 962; *see also Holbron,* 80 Hawaiʻi at 32, 904 P.2d at 917. State's instruction no. 2, to which the defense did not object, provided that the jury must examine Defendant's conduct under the circumstances as she believed them to be at the time. Accordingly, when read as a whole, the State's proposed instructions nos. 1 and 2 properly explain the applicable law.

Finally, State's instruction no. 2 provided that Defendant's "conduct shall constitute a substantial step in a course of conduct, *if* it is strongly corroborative of intent to commit the offense charged." (Emphasis added.) This instruction is clear: it contains the qualifier "if" and does not tell the jury, as Defendant claims, that her conduct alone was a "substantial step" of the offense.

As a whole, the trial court's instructions on attempted murder in the second degree were not "prejudicially insufficient, erroneous, inconsistent, or misleading." Accordingly, we hold that the trial court did not err in this regard.

## IV. *CONCLUSION*

For the foregoing reasons, we overrule *State v. Warner*, 58 Haw. 492, 573 P.2d 959 (1977), insofar as it automatically required an EMED manslaughter instruction, and affirm Defendant Sawyer's conviction.