**Electronically Filed
Supreme Court
SCWC-14-0000061
14-NOV-2016
08:05 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

LEON MAKANALANI FAAMAMA,
Petitioner/Defendant-Appellant.

SCWC-14-0000061

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000061; CR. NO. 12-1-1457)

NOVEMBER 14, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK, JJ.,
WITH CIRCUIT JUDGE CRANDALL, IN PLACE OF WILSON, J., RECUSED,
DISSENTING

OPINION OF THE COURT BY RECKTENWALD, C.J.

Leon Makanalani Faamama was charged with Theft in the First Degree.  After a jury trial in the Circuit Court of the First Circuit, he was found guilty as charged.  Faamama appealed, arguing inter alia that the circuit court erred in not

instructing the jury on the lesser-included offense of Theft in the Second Degree.  The Intermediate Court of Appeals (ICA) affirmed, and Faamama now seeks review from this court.

We find that the court erred in failing to instruct the jury on the lesser-included offense.  There was a rational basis in the evidence for a verdict acquitting Faamama of Theft in the First Degree and convicting him of Theft in the Second Degree, and this error was not harmless.

Accordingly, Faamama's judgment of conviction is vacated and the case remanded for a new trial.

## I.  Background

### A.  Trial Proceedings

On October 2, 2012, Faamama was charged with Theft in the First Degree in violation of Hawai'i Revised Statutes (HRS) §§ 708-830.5(1)(a)[1] and 708-830(2)[2].

---

[1]     HRS § 708-830.5(1)(a) (2006) provides:

(1) A person commits the offense of theft in the first degree if the person commits theft:

(a) Of property or services, the value of which exceeds $20,000[.]

[2]     HRS § 708-830(2) (2006) provides:

A person commits theft if the person does any of the following:

. . . .

(2) Property obtained or control exerted through

(continued...)

2

At trial,[3] the State relied heavily on the testimony of Pastor John Vaughn, the alleged victim. Vaughn met Faamama during the course of his ministry and developed a friendship with him.

Prior to October 2011, Faamama told Vaughn that he was participating in the Hawai'i Drug Court program, but was being harassed by the Drug Court administrator, Janice Bennett. Faamama told Vaughn that he was routinely forced to move from one clean-and-sober house to another and each time pay the first month's rent and a security deposit. Faamama also told Vaughn that Bennett was extorting money from him by making him pay large fees that other participants were not made to pay. Faamama asked Vaughn for money for the rent, security deposits, and fees, and Vaughn began giving him money on a weekly basis.

Faamama told Vaughn that he was going to sue Bennett for harassment, and that once the lawsuit was resolved, Vaughn would get all of his money back. Faamama continued asking for larger amounts of money, claiming that Bennett kept extorting him for more fees and threatening him with imprisonment if he did not pay.

---

[2](...continued)
    deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

[3]    The Honorable Glenn J. Kim presided.

Vaughn testified that, between October 2011 and February 2012, he gave Faamama $54,000. Vaughn testified that all of this money came from twenty-six withdrawals on his home equity line of credit.

Eventually, Vaughn became concerned that he would not be repaid. Vaughn attempted to go to the Drug Court to talk to the presiding judge, Judge Steven Alm, but Faamama told him that the lawsuit against Bennett was confidential and therefore Vaughn could not enter the court. Faamama told Vaughn that Judge Alm was aware of the lawsuit and that, as soon as the outstanding fees were paid, the suit could be set for trial. Faamama also told Vaughn that Judge Alm had a friend in the Treasury Department and that it was assured that the money would be returned to Vaughn once the lawsuit was finished.

Vaughn gave Faamama money by writing checks on his home equity credit line, cashing the checks, and then directly giving the cash to Faamama. Vaughn also withdrew around $7,000 by maxing out three of his credit cards. Vaughn testified that he also received some money from the Veterans Administration after his father had passed away, and that he "gave it all"--around "three to four thousand dollars"--to Faamama. In addition, Vaughn testified that he borrowed approximately $47,000 from his friends and relatives that was given to Faamama.

4

The State introduced into evidence numerous exhibits to corroborate that the money had been withdrawn by Vaughn. Exhibit 18A was data from Vaughn's checking account, showing that he had written a $500 check to Faamama on September 5, 2012. Exhibit 18B was a spreadsheet showing that Vaughn had withdrawn $53,575 from his home equity line of credit. Exhibit 18C showed the history of Vaughn's home equity line of credit from September 19, 2011, to May 8, 2012, and Vaughn testified that all of the cash withdrawals were for Faamama. Exhibits 18D and 18E were lists of people that had loaned Vaughn roughly $47,000 to help Faamama. Exhibit 18F was a spreadsheet of the amount of money that Vaughn took for cash advances on his credit cards, totaling $6,395.75.

The State then introduced Exhibits 1A and 2, which were letters that had been written by Vaughn and given to Faamama to give to Judge Alm. In the first letter, dated March 8, 2012, Vaughn expressed concern about the "drug court staff . . . requiring large sums of money from [Faamama] and threatening that he would go to jail if he did not pay." Vaughn stated that he was "concerned about [his] own finances" and that he loaned "[Faamama] about $56,000 that the drug court has required of him for various things."

In the letter dated March 22, 2012, Vaughn wrote to Judge Alm again "out of continued concern and frustration"

5

because "the Drug Court staff keeps finding new charges that Leon Faamama must pay or go to jail." He also mentioned that he loaned Faamama "over $60,000 over the last several months." He wrote that he had "additional debts at 25% interest" which he was "carrying for [Faamama]."

The State next introduced Exhibit 12, which were receipts dated August 3, 2012, August 22, 2012, August 27, 2012, and August 30, 2012. Vaughn testified that he started making receipts only toward the "very end," after his wife told him that he should do so, both for his benefit as well as for Faamama's. The total amount of these receipts was approximately $18,000.

On cross-examination, defense counsel questioned Vaughn as to whether Faamama's Drug Court claims made sense to him. Vaughn replied that it did not anymore, but back then he was more focused on quickly getting the money to Faamama than asking questions. Vaughn also admitted that before he started giving money to Faamama, he had run up the debt on his home equity line of credit to $134,000. Vaughn also testified that he did not keep accounts of his spending or of the money he gave to Faamama. He also testified that he "co-mingled his personal money" with the money that he received from his friends and relatives by putting it in his checking account.

Vaughn further testified on cross that he never mailed

the letters to Judge Alm because he thought Faamama would give them to him. He testified that he did not follow up, despite not getting a response, because Faamama told him that the case was pending and thus Judge Alm could not talk about it. He said that he did go to the Drug Court, but waited outside and never spoke to anyone.

The State introduced several other witnesses at trial, including Judge Alm and Bennett who both testified that the Drug Court participants paid a "one-time flat fee" of $250 and that Faamama paid nothing more. Further, Bennett testified that she did not tell Faamama that he would go to jail if he did not pay large sums of money to Drug Court, nor did she require him to pay fees that other participants were not paying.

Faamama did not testify, and the defense did not present any witnesses. At the end of trial, Faamama moved for a judgment of acquittal, arguing that the State failed to make a prima facie case. The court denied the motion.

## B.  Jury Instructions

At the end of trial, defense counsel requested that a Theft in the Second Degree instruction be given to the jury because "it's possible the jury could believe that the State did not prove that he took over $20,000 but that [the State] did prove, based on the receipts, that he did receive $18,000." The

circuit court initially agreed, noting that he was going to make the same suggestion. The court stated that a reasonable juror may be convinced that the rest of the money was a gift or was not proven, and thus would want to convict Faamama only on the basis of $18,000, the amount for which there were receipts signed by Faamama.

The State disagreed, arguing that "in order to find [Faamama] guilty of stealing that amount, they would have to reject that idea or claim that it was given as a loan, and if they reject that idea or claim, I don't see any rational basis for them to reject the rest of the money." The State also argued that significant evidence was presented to corroborate Vaughn's testimony.

The State argued that the letters written by Vaughn to Judge Alm were the "same sorts of evidence" as the receipts because Vaughn had written the amount of money he had given to Faamama. The court agreed with this argument, noting that the letters were in writing and that the jury could look at them as well.

The court denied defense counsel's request, concluding that there was no "rational basis for a reasonable juror" to believe that Faamama took less than $20,000 from Vaughn. Defense counsel then requested an instruction of Theft in the Fourth

Degree, but the court denied the request on the same basis.

Accordingly, the jury was only instructed on Theft in the First Degree.

## C.  Jury Verdict and Sentencing

On September 16, 2013, the jury found Faamama guilty of Theft in the First Degree.  The Court sentenced Faamama to prison for ten years, ordered him to pay restitution of $158,910.75 to Vaughn, and also $105 to the Crime Victim Compensation Fund.

## D.  ICA Proceedings

Faamama appealed to the ICA, alleging four points of error:  (1) the court violated his constitutional right to testify by failing to administer a proper Tachibana colloquy; (2) the court erred in failing to instruct the jury on lesser-included theft offenses; (3) the DPA committed prosecutorial misconduct in his opening statement and closing argument; and (4) the court erred in denying his motion for judgment of acquittal as there was insufficient evidence in support of his conviction.

In a summary disposition order, the ICA rejected Faamama's arguments and affirmed the judgment.  The ICA held that (1) there was ample and compelling evidence to support the jury's verdict finding Faamama guilty of Theft in the First Degree; (2) any error in the court's failure to instruct on lesser-included

9

theft offenses was harmless; (3) the court engaged in two colloquies with Faamama that both complied with the Tachibana requirements, which constituted valid on-the-record waivers by Faamama of his right to testify; and (4) the DPA's remarks in opening statement and closing argument did not constitute prosecutorial misconduct because they were "reasonable inferences" from the evidence that was introduced at trial.

## II. Standards of Review

## B. Jury Instructions

"The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." State v. Kassebeer, 118 Hawai'i 493, 504, 193 P.3d 409, 420 (2008) (internal quotation marks and citation omitted).

## III. Discussion

Faamama's application presents the following questions:

1. Whether the ICA gravely erred in holding that there was substantial evidence to support Fa'amama's conviction?

2. Whether the ICA gravely erred in holding that any error by the Circuit Court in failing to instruct the jury on the lesser-included theft offenses was harmless?

3. Whether the ICA gravely erred in holding that the Circuit Court complied with the Tachibana requirements and obtained a valid on-the-record waiver of Fa'amama's right to testify?

10

> 4. Whether the ICA gravely erred in holding that the DPA's remarks in opening statement and closing arguments did not constitute prosecutorial misconduct?

We conclude that the circuit court erred in refusing to instruct the jury on the lesser-included offense of Theft in the Second Degree (Theft 2). Accordingly, we vacate Faamama's conviction on this basis and do not address his remaining points of error.

To support a conviction for Theft in the First Degree (Theft 1), the State was required to prove, among other things, that Faamama had committed theft of "property or services, the value of which exceeds $20,000." HRS § 708-830.5.

During the settling of jury instructions, defense counsel asked for a Theft 2 instruction, arguing that "it's possible the jury could believe that the State did not prove that [Faamama] took over $20,000 but that [the State] did prove, based on the receipts, that [Faamama] did receive $18,000." The court declined to give the instruction, finding that there was not "a rational basis for a reasonable juror to acquit of the Theft 1 and convict only of Theft 2." The court also rejected defense counsel's proposed instruction on Theft in the Fourth Degree (Theft 4) for the same reason.

Faamama argued to the ICA that the court erred in failing to instruct the jury on the lesser-included theft offenses. Passing on that issue, the ICA concluded that any

11

error was harmless beyond a reasonable doubt.  It noted that Faamama did not present a plausible motive for Vaughn to testify falsely or any significant evidence to contradict his testimony, and that the State presented evidence that the amount of money far exceeded the $20,000 minimum for Theft 1.  Accordingly, there was "no reasonable possibility that the Circuit Court's failure to instruct the jury on lesser-included theft offenses affected the outcome of this case or contributed to Faamama's first-degree theft conviction."

Faamama's application argues that there was a rational basis for a verdict acquitting Faamama of Theft 1 and convicting him of the lesser-included offenses, and as such, the court was required to give the requested jury instruction.  The State responds that, based on the record, there "existed no rational basis to acquit of the charged offense and to convict [Faamama] of any lesser-included theft offense."

We agree that there was a rational basis for the jury to acquit Faamama of Theft 1 and find him guilty of Theft 2.  Further, this failure to instruct the jury on the lesser-included offense was not harmless.  Accordingly, the judgment of conviction as to Theft 1 is vacated and the case remanded for a new trial.

## A.   The Circuit Court was Required to Give the Requested Jury Instruction on the Lesser-Included Offense of Theft 2.

The initial question is whether the court erred in failing to give the Theft 2 jury instruction.  In State v. Haanio, we mandated that "trial courts must instruct juries as to any included offenses when 'there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.'" 94 Hawaiʻi 405, 413, 16 P.3d 246, 254 (2001) (quoting HRS § 701-109(5) (1993)), overruled on other grounds by State v. Flores, 131 Hawaiʻi 43, 314 P.3d 120 (2013).  The rationale behind the rule is that the public interest is best served by the jury assessing criminal liability if it exists in the evidence.  See Flores, 131 Hawaiʻi at 51, 314 P.3d at 128.

A Theft 1 conviction requires theft "[o]f property or services, the value of which exceeds $20,000."  HRS § 708-830.5. A Theft 2 conviction requires theft "[o]f property from the person of another" or "[o]f property or services the value of which exceeds $300."  HRS § 708-831.  Here, neither party disputes that Theft 2 is a lesser-included offense of Theft 1. See State v. Stenger, 122 Hawaiʻi 271, 293, 226 P.3d 441, 463 (2010); HRS § 701-109(4)(a).

Because Theft 2 is a lesser-included offense of Theft

13

1, the critical question is "whether any view of the evidence in this case presented a rational basis for the jury to acquit" Faamama of Theft 1, and, alternatively, to convict him of Theft 2. Flores, 131 Hawaiʻi at 53, 314 P.3d at 130 (emphasis added). The difference between Theft 1 and Theft 2, as charged in this case, is the value of what was stolen. Theft 1 involves theft exceeding $20,000, while Theft 2 involves theft exceeding $300. Compare HRS § 708-830.5 with HRS § 708-831.

In this case, the court should have given a Theft 2 instruction. At trial, Vaughn testified that he gave Faamama somewhere between $134,560 and $164,000. This amount was established primarily through Exhibits 18B, 18C, 18D, 18E, and 18F, which were spreadsheets reflecting all of the money that Vaughn said he gave to Faamama.

However, there is a lack of direct evidence corroborating Vaughn's testimony that he gave Faamama amounts totaling over $20,000. Vaughn testified that he would give Faamama cash by writing checks out to "cash," except for one check in the amount of $500. Moreover, Vaughn did not write anything in the notation section of the checks and did not start generating receipts until the "very end," after his wife told him that he should do so. Only four receipts were created by Vaughn and signed by Faamama, which were introduced by the State as

14

Exhibit 12.  Adding the four receipts to the $500 check that was written out to Faamama results in a total of $19,175--$825 less than the $20,000 required for a Theft 1 conviction.

On cross-examination, Vaughn testified that he did not keep an accounting of the money he gave to Faamama.  Vaughn also admitted that he had taken out thousands of dollars during the charged period for his personal use.  He could not specify which amounts were for personal use and which he gave to Faamama.

"Because the jury was the exclusive judge of the value of evidence and credibility of witnesses, it had the ultimate discretion to decide to what extent a witness should be believed and whether to discredit testimony."  Stenger, 122 Hawai'i at 295, 226 P.3d at 465 (internal quotation marks omitted).  On this record, a juror could rationally have chosen not to believe, beyond a reasonable doubt, that all of the transactions had occurred.  A juror could have decided to credit the receipts that were signed by Faamama, as well the check written out to him, but have a reasonable doubt as to the validity of the amounts that did not have similar corroboration.  Accordingly, a juror would have a rational basis in the evidence to acquit Faamama of Theft 1, and convict him of Theft 2.

In its decision to deny giving the Theft 2 instruction, the court reasoned that the two letters Vaughn wrote to Judge Alm

were the "same sorts of evidence" as the receipts. However, the receipts were signed by Faamama, whereas the letters were not. A juror could have found that Vaughn's stated amounts in the letters--$56,000 and $60,000--were not credible.

The State argues that this case is similar to State v. Nichols, 111 Hawai'i 327, 141 P.3d 974 (2006), and State v. Sneed, 68 Haw. 463, 718 P.2d 280 (1986). In both cases, we upheld the court's decision to not give a lesser-included offense instruction. Neither case is analogous to the instant case.

In Nichols, whether the defendant should have been convicted of first or second degree terroristic threatening hinged on whether the accused acted with the requisite state of mind with respect to the attendant circumstance of "public servant." 111 Hawai'i at 327, 141 P.3d at 974. The only evidence regarding "public servant" came from an officer's uncontradicted testimony that: (1) in the course of his official duties as a police officer, he had been involved in a confrontation with the defendant; and (2) the defendant made a statement that indicated he knew that he was threatening a police officer. Id. at 342, 141 P.3d at 989. Accordingly, the "only rational inference that could be drawn . . . is that [the defendant] knew that he was threatening a police officer." Id.

In contrast, the evidence presented at trial would

16

allow another rational inference to be drawn--that Faamama had committed theft, but not in an amount in excess of $20,000. This is distinguishable from Nichols, where there was no other evidence presented on the question of whether the defendant knew he was threatening a police officer.

In Sneed, the defendant, who had been found guilty of Theft 1, argued that the court committed plain error by failing to instruct the jury as to lesser-included theft offenses. See 68 Haw. at 463, 718 P.2d at 280. We held that since the only defense advanced by the defendant was a "flat denial" of committing theft, there would not have been a factual basis in the evidence for the jury to acquit on Theft 1, but convict on lesser-included theft offenses. Id. at 464, 718 P.2d at 281. In contrast here, the State presented direct physical evidence--four receipts signed by Faamama and a check written out to Faamama--that corroborated $19,175 of Vaughn's alleged losses. The State did not present similar evidence to substantiate the additional losses claimed by Vaughn. Therefore, unlike Sneed, there was a rational basis for a verdict acquitting Faamama of Theft 1 and convicting him of Theft 2.[4]

---

[4] Faamama also argues that the court should have given a Theft 4 instruction, which involves theft not in excess of $100. See HRS § 708-833 (2014). We disagree, insofar as there was not a rational basis in the evidence for a verdict acquitting Faamama of Theft 1 and convicting him of Theft 4. See Haanio, 94 Hawaiʻi at 413, 16 P.3d at 254. The State introduced

(continued...)

17

Accordingly, the court was required to give the requested jury instruction.  See Stenger, 122 Hawai'i at 295-96, 226 P.3d at 465-66.

**B.    The ICA was Incorrect to Conclude that the Circuit Court's Failure to Instruct on Theft 2 was Harmless Beyond a Reasonable Doubt.**

The ICA concluded that any error in the court's failure to instruct on lesser-included theft offenses was harmless beyond a reasonable doubt because there was no reasonable possibility that it affected the outcome of the case.  We respectfully disagree.

In Flores, this court overruled the portion of Haanio holding that an error in failing to instruct on a lesser-included offense was always harmless when the jury convicted of the charged offense.  See Flores, 131 Hawai'i at 44, 314 P.3d at 121. We noted that holding such errors harmless as a matter of law is inconsistent with the function of the jury in rendering an accurate verdict and upholding the "truth seeking function of the judicial system."  Id. at 56, 314 P.3d at 133 (internal quotation marks and citation omitted).

In Flores, we pointed out that when jury instructions

---

[4](...continued)
Exhibit 12, which showed four receipts, generated by Vaughn and signed by Faamama, in the amount of approximately $18,000.  The State also introduced Exhibit 18A, a check written by Vaughn to Faamama in the amount of $500.

or their omission are at issue on appeal, "the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading."  Id. at 57-58, 314 P.3d at 134-35 (quoting State v. Sawyer, 88 Hawai'i 325, 329, 966 P.2d 637, 641 (1998)).  Since the instructions in Flores did not include the lesser-included offense, they were thus insufficient.  See Flores, 131 Hawai'i at 58, 314 P.3d at 135.  Similarly here, the court's jury instructions in this case were prejudicially insufficient, inasmuch as they did not include the lesser-included offense of Theft 2.

The effect of not giving the lesser-included offense instruction was to force the jury to choose between two options, conviction of Theft 1, or acquittal.  It is precisely this "all or nothing" strategy that was rejected in Flores:

> Holding such errors harmless perpetuates the risk that the jury in any given case did not actually reach the result that best conforms with the facts, because the jury was only presented with two options—guilty of the charged offense or not guilty—when in fact, the evidence may admit of an offense of lesser magnitude than the charged offense.

131 Hawai'i at 56, 314 P.3d at 133.

Accordingly, because there was a rational basis for the jury to acquit Faamama of Theft 1 and to find him guilty of Theft 2, his conviction must be vacated.  See id. at 58, 314 P.3d at 135 ("The failure to instruct the jury on a lesser included

19

offense for which the evidence provides a rational basis warrants vacation of the defendant's conviction.").

## IV.  Conclusion

For the foregoing reasons, the circuit court erred in failing to instruct the jury on Theft in the Second Degree, and this error was not harmless.  Accordingly, the ICA's April 22, 2016 judgment on appeal and the circuit court's December 4, 2013 judgment of conviction as to Theft in the First Degree are vacated, and the case is remanded to the circuit court for a new trial.

Thomas R. Waters
for petitioner

James M. Anderson
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

