83 P.3d 753

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**James LIBERO, Defendant–Appellant.**

**No. 23872.**

Intermediate Court of Appeals of Hawai'i.

Dec. 31, 2003.

Certiorari Denied Feb. 9, 2004.

492

Matthew S. Kohm, Pukalani, on the briefs, for defendant-appellant.

Simone C. Polak, Deputy Prosecuting Attorney, County of Maui, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant James Libero (Libero) appeals from the October 4, 2000 Judgment[1] entered by the Circuit Court of the Second Circuit[2] (circuit court). Libero was charged with and convicted of the following:

*Count One:* Attempted Murder in the Second Degree in violation of Hawaii Revised Statutes (HRS) §§ 705–500 (1993)[3] and 707–701.5 (1993).[4]

---

1. The Judgment fails to set forth any of the Hawaii Revised Statutes (HRS) sections and subsections under which Libero was charged and/or convicted. The circuit court is hereby ordered to file an Amended Judgment setting forth the particular HRS sections and subsections of which Libero was convicted.

2. The Honorable Rhonda I.L. Loo presided.

3. HRS § 705–500 (1993) provides:
 § **705–500 Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
 (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
 (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

 (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
 (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

4. HRS § 707–701.5 (1993) provides as follows:
 § **707–701.5 Murder in the second degree.** (1) Except as provided in section 707–701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
 (2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706–656.

*Count Two:* Assault in the First Degree in violation of HRS § 707–710(1) (1993).[5]

*Count Three:* Attempted Sexual Assault in the First Degree in violation of HRS §§ 705–500 (1993) and 707–730(1)(a) (1993).[6]

Libero was sentenced to life with the possibility of parole on Count One, ten years of imprisonment on Count Two, and twenty years of imprisonment on Count Three. Counts One and Two were to run concurrently, and Count Three was to run consecutively with Count One. Libero was ordered to pay a Crime Victim Compensation fee in the amount of $500.00.

Libero argues that his convictions must be reversed because (1) the State relied on his confession to prove the corpus delicti for the assault, attempted sexual assault, and attempted murder charges and failed to corroborate the confession with other substantial evidence; (2) the evidence failed to prove that Libero had the specific intent to kill; (3) the corpus delicti and evidence pertaining to the attempted sexual assault was insufficient; (4) jury instructions were incomplete, misleading, confusing, and defective; (5) Libero was denied his right to a speedy trial; (6) Libero's self-incriminating statements to the police should have been suppressed; (7) the circuit court abused its discretion by allowing hearsay statements and testimony of other criminal acts; and (8) Libero's trial counsel failed to provide effective assistance.[7] We affirm the October 4, 2000 Judgment as to Counts One and Two. We reverse the Judgment as to Count Three, Attempted Sexual Assault in the First Degree.

## I.

This case arose from an incident that occurred on November 23, 1998 (incident).

Rex Clark (Clark) testified that prior to the night of the incident he and the victim, Nancy Sirovetz (Nancy), had been camping about fifty-to-sixty feet apart in the same area on the beach in Kihei. The evening of the incident, Clark had gone with some friends to watch the sunset about four city blocks from where Clark was camping. Returning to his friends' car, Clark met Libero on the path; Libero was walking toward the area where Clark's campsite was. During the night Clark heard noises, like someone groaning and vomiting, coming from the area in which Nancy was camping. Assuming Nancy was merely drunk, Clark did nothing until the following morning when, upon checking on her, he found Nancy covered by a bloody sheet.

Officer Hickle testified that the medics were removing Nancy from the scene when he arrived on November 24, 1998. He questioned Nancy in the back of the ambulance, and she told him she had been asleep when the attack occurred and did not know who did it. Nancy was transported by ambulance to the hospital.

Dr. Thomas Rogers, Nancy's attending physician, testified that Nancy presented at the emergency room with severe blunt trauma to her head, resulting in multiple fractures to the right temporal area and the left side of her brain and skull. Nancy's right eye ball was ruptured, and there was bruising of her brain and a small blood clot on her brain.

Detective Jakubczak testified that while the police officers were canvassing the beach area where Nancy had been found, one person they talked to mentioned that she had seen Libero at approximately 7:00 p.m. on November 23, 1998 about 250 yards down the

5. HRS § 707–710 (1993) provides:

 **§ 707–710 Assault in the first degree.** (1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.
 (2) Assault in the first degree is a class B felony.

6. HRS § 707–730 (1993) states in relevant part:

**§ 707–730 Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:
(a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]
. . . .
(2) Sexual assault in the first degree is a class A felony.

7. Libero's trial counsel is not his counsel on appeal.

beach from the incident area. Detective Jakubczak, Detective Holokai, Officer Hickle, and Officer Nopel went to Libero's house the evening of November 24, 1998 to question Libero. Libero told the officers that he had been on the beach on November 23 doing Tai Chi exercises when he heard a sound like someone gagging. He went to help and found Nancy with her bloody face covered and no clothing on from the waist down. Libero said he was afraid he would be blamed for this, so he went home and did not tell anyone. Libero told the officers that he had seen a kiawe[8] branch, approximately three feet long, about two-to-three feet from Nancy. Libero realized at the time that someone had hit Nancy with the branch. Before leaving Libero's home, the police took a Polaroid picture of Libero. Based on Libero's description of Nancy's partial nudity, the police ordered a sexual assault examination of Nancy.

Officer Hickle testified that after the questioning of Libero, he and Officer Nopel went back to the incident area to look for the kiawe branch. The incident area was totally undeveloped and was in total darkness. The officers used flashlights to find the branch. The officers found the branch laying where Libero had said it would be.

Detective Jakubczak further testified that on November 27, 1998, Nancy gave Detective Jakubczak a description of a person she had spoken with at the campsite. That was the last thing Nancy remembered until the next morning when she was being taken to the ambulance. Nancy described the person as an attractive Hawaiian looking male, approximately thirty years old, with dark short hair and a dark complexion. Detective Jakubczak testified that he interpreted her description to be a description of Libero.

Detective Jakubczak subsequently went back to the hospital and showed the picture of Libero to Nancy along with five other pictures. Nancy was unable to identify Libero as her attacker because she said all the photographs basically were about the same,

it was dark the night of the incident, and "[s]he couldn't really see."

Detective Jakubczak testified that on December 1, 1998, he called Libero and asked Libero to come to the police station to discuss Libero's prior statement and to clarify some points. Detective Jakubczak read Libero his *Miranda* rights. Libero stated that when he was on the beach, he heard someone gagging and calling for help. He discovered Nancy with a T-shirt covering her bloody face and with no clothing on from the waist down. Libero became frightened, backed away, and tripped over an object. He picked up the object, noticed it was a kiawe branch, got scared, dropped the branch, ran home, and did not tell anyone.

Detective Jakubczak showed Libero a kiawe branch recovered from the incident scene and asked Libero if he could identify this as the branch he had tripped over. Libero said, "Yes, this is the same one." When asked why he did not call the police or tell anyone that Nancy was hurt, Libero said he did not want to be blamed for anything because he had picked up the branch after hearing the noise, was looking around and heard a noise behind him, instinctively turned and swung the branch, and hit a woman in the back of the head. After he hit the woman, he looked and it was Nancy. He got scared, threw down the branch, and ran home.

Detective Jakubczak testified that he then mentioned to Libero what Nancy had said about a Hawaiian man stopping to talk to her and that was the last thing she remembered until waking up when she was being put in the ambulance. Libero then said he wanted to tell the truth about what happened. Libero said he came across Nancy, sat down and talked to her, prayed with her, and put his hand out and touched her "affectionately." Nancy asked him to leave, turned her back to him, and started talking to herself. Libero stood up and became upset, noticed a branch and grabbed it, and hit Nancy in the back of the head with the branch. Nancy fell to the ground, and Libero took off her pants because he wanted to have sex with her, but he

---

8. An Algaroba tree, a legume from Peru, first planted in 1828 in Hawai'i, where in dry areas, it has become one of the commonest and most useful trees. Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 146 (6th ed.1986).

"couldn't do it." Nancy got up, Libero hit her again in the back of her head, she fell down, and he dropped the branch. Libero grabbed a shirt, put the shirt on Nancy's face, and then ran home. Libero identified the kiawe branch as the branch he used when he intentionally hit Nancy. Detective Jakubczak asked Libero if Libero would make a tape-recorded statement. Libero agreed. Detective Jakubczak identified State's Exhibit 31 as Libero's tape-recorded confession, which was played for the jury.

In his tape-recorded confession, Libero stated that he and Nancy were "talking story." Libero kept interrupting Nancy, and she got mad and asked him to leave. Nancy was sitting and talking to herself when Libero hit her from behind on her head in the back of her left ear with a two-to-five foot long kiawe stick. Nancy fell and did not get up. Libero checked to see if she was still breathing and then took off the bottom half of Nancy's clothes. He thought he wanted to have sex with her, but then he "didn't want to." Nancy got up and Libero hit her again with the kiawe stick on the side of her left ear.[9] Nancy went down again. Libero covered her head with her shirt. He left the kiawe stick where it was and ran home.

Detective Jakubczak further testified that he had requested a sexual assault examination from the doctors at the hospital. He was told by one of the doctors that there was no trauma to the genitalia and no seminal fluid or sperm had been detected.

Vincent Souki (Souki), an evidence specialist with the Maui Police Department, testified that he had eighteen years of experience as a medical technologist and had trained with the Maui Police Department and FBI. Souki testified that he air dried the blood found on the kiawe branch.

Wayne Kimoto, a Honolulu Police Department criminalist and the State's expert witness on forensic serology and DNA analysis, testified that no seminal fluid was detected on Nancy's vaginal swabs and the test for Nancy's blood on the kiawe branch was inconclusive.

Libero testified at trial that on the evening of November 23, 1998, he was walking on a trail down to the beach when he simultaneously stepped on a kiawe branch and heard someone moaning in the bushes. He picked up the kiawe branch and threw it on the side. Libero asked "who was there" four times, but got no response. He then walked home. The next evening a detective came to Libero's house and asked Libero if he knew Nancy and knew that she had been beaten up and raped. Libero said no, but he had seen someone sleeping in the bushes and had stepped on a kiawe branch and thrown it to the side. Libero gave the police permission to take his picture.

Libero testified he received a telephone call from Detective Jakubczak on December 1, asking him to come to the police station at 2:00 p.m. to check up on some evidence the police had found at the scene. Libero was interviewed by Detectives Jakubczak and Kaya. Libero testified that while he was waiting for the evidence to be brought, he read and signed a paper waiving his rights. Detective Jakubczak brought in the kiawe branch and asked Libero if he recognized it, and Libero said, "Yeah." Libero demonstrated how he picked up the branch and threw it to this side. Libero told the detectives that he had never seen Nancy before, but the detectives kept pressuring him, saying "tell us you hit the lady; we let you go home." Libero testified that the detectives kept on yelling and screaming at him, so he told them, "Yeah, fine. I hit her and what." Libero contended that he was manipulated, pressured, and forced into giving a false confession and that he had "never met [Nancy] in his life."

Nancy was murdered by someone other than Libero prior to trial.

## II.

### A. QUESTIONS OF LAW

■ "Questions of law are freely reviewed upon appeal under a right/wrong standard of

---

9. In his recorded confession, Libero admitted to striking Nancy only once more after removing her clothes; however, Dr. Rogers testified that the nature of her subsequent injuries indicated she was struck at least three times.

review." *State v. Faufata,* 101 Hawai'i 256, 265, 66 P.3d 785, 794 (App.2003).

## B. SUFFICIENCY OF THE EVIDENCE

Hawai'i's Supreme Court has repeatedly stated that the sufficiency of evidence shall be reviewed on appeal as follows:

[E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Quitog,* 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997) (quoting *State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996)) (emphasis omitted). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Eastman,* 81 Hawai'i at 135, 913 P.2d at 61.

*State v. Richie,* 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998).

## C. JURY INSTRUCTIONS/PLAIN ERROR

■ As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error.... [T]his Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.

*State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citations omitted).

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. If the instructions requested by the parties are inaccu-rate or incomplete but are necessary in order for the jury to have a clear and correct understanding of what it is that they are to decide, then the trial court has the duty either to correct any defects or to fashion its own instructions.

Nevertheless, the trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. If that standard is met, however, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal. Whether a jury instruction accurately sets forth the relevant law is a question that this court reviews *de novo.*

Furthermore, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*State v. Vanstory,* 91 Hawai'i 33, 42–43, 979 P.2d 1059, 1068–69 (1999) (internal quotation marks, citations, and brackets omitted; block quote format changed).

## D. RIGHT OF CRIMINAL DEFENDANT TO A SPEEDY TRIAL

■ The right of a criminal defendant to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution. *State v. White,* 92 Hawai'i 192, 201, 990 P.2d 90, 99 (1999). "In all criminal prosecutions, the accused shall enjoy the right to a

speedy and public trial by an impartial jury[.]" Hawai'i Const. art. I, § 14.

We review questions of constitutional law "by exercising our own independent constitutional judgment based on the facts of the case." *State v. Rogan,* 91 Hawai'i 405, 411, 984 P.2d 1231, 1237 (1999) (citations omitted). Therefore, we review questions of constitutional law *de novo* under the "right/wrong" standard. *State v. Mallan,* 86 Hawai'i 440, 443, 950 P.2d 178, 181 (1998) (citation omitted, emphasis added)[.]

*Faufata,* 101 Hawai'i at 265, 66 P.3d at 794.

## E. PLAIN ERROR/HAWAI'I RULES OF PENAL PROCEDURE RULE 52(b)

■ Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (internal quotation marks and citation omitted).

■ The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Vanstory,* 91 Hawai'i at 42, 979 P.2d at 1068 (internal quotation marks and citation omitted).

This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*Id.* (quoting *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)).

## F. EVIDENTIARY RULINGS

■ "We apply two different standards of review in addressing evidentiary issues. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." *State v. Ortiz,* 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (internal quotation marks and citation omitted).

We apply the right/wrong standard to questions of hearsay:

The requirements of the rules dealing with hearsay are such that application of the particular rules can yield only one correct result. HRE [Hawaii Rules of Evidence] Rule 802 (1993) provides in pertinent part that hearsay is not admissible except as provided by these rules. HRE Rules 803 and 804(b) (1993) enumerate exceptions that are not excluded by the hearsay rule. With respect to the exceptions, the only question for the trial court is whether the specific requirements of the rule were met, so there can be no discretion. Thus, where the admissibility of evidence is determined by application of the hearsay rule, there can generally be only one correct result, and the appropriate standard for appellate review is the right/wrong standard.

91 Hawai'i at 189–90, 981 P.2d at 1135–36 (internal quotation marks, citations, footnote, and brackets in original omitted; bracketed material added) (quoting *State v. Christian,* 88 Hawai'i 407, 418, 967 P.2d 239, 250 (1998)).

## G. INEFFECTIVE ASSISTANCE OF COUNSEL

■ The proper standard for claims of ineffective assistance of counsel on appeal is whether, "viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." *Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (internal quotation marks, citation, and brackets omitted).

When an ineffective assistance of counsel claim is raised, the defendant has the burden of establishing: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

*State v. Jones*, 96 Hawaiʻi 161, 166, 29 P.3d 351, 356 (2001) (internal quotations marks and citation omitted).

 "Determining whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker. Accordingly, no showing of 'actual' prejudice is required to prove ineffective assistance of counsel." *Barnett v. State*, 91 Hawaiʻi 20, 27, 979 P.2d 1046, 1052–53 (1999) (internal quotation marks, citation, and ellipsis omitted) (quoting *State v. Fukusaku*, 85 Hawaiʻi 462, 479–80, 946 P.2d 32, 49–50 (1997)).

## III.

### A. CORPUS DELICTI FOR ATTEMPTED MURDER AND ASSAULT CHARGES WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND EVIDENCE INDEPENDENT OF LIBERO'S CONFESSION.

 Libero contends the corpus delicti [10] (the basic injury and the criminal act that caused the injury) for the attempted murder, assault, and attempted sexual assault charges was not corroborated by substantial evidence, other than Libero's confession, and therefore the charges should not have been submitted to the jury. Specifically, he argues (1) there was no independent evidence, outside of his confession, that Nancy was "struck at different times to substantiate a separate course and conduct," and (2) without independent evidence that more than one act occurred, the corpus delicti is insufficient to support the attempted murder and assault charges. Similarly, he contends the only evidence to support the attempted sexual assault charge was his confession.

 It is a fundamental principle of common law that before a person can be convicted of a crime, it must be proven that the crime occurred. *State v. Dudoit*, 55

Haw. 1, 2, 514 P.2d 373, 374 (1973). In order to prove that a crime occurred, the State must prove beyond a reasonable doubt:

> (1) the basic injury ..., (2) the fact that the basic injury was the result of a criminal, rather than a natural or accidental cause, and (3) the identification of the defendant as the perpetrator of the crime. The first two of these elements constitute the corpus delicti or body of the crime, which is proved when the prosecution has shown that a crime has been committed by someone.

*Id.*

The Hawaiʻi Supreme Court has held that "while the corpus delicti cannot be established by the extrajudicial confession of the defendant unsupported by any other evidence, it may be established by such a confession corroborated by other facts and circumstances." *State v. Yoshida*, 44 Haw. 352, 360, 354 P.2d 986, 991 (1960) (internal quotation marks and citation omitted).

A review of the record indicates that evidence was presented, in addition to Libero's confession, upon which the jury could have found the corpus delicti for the attempted murder and assault charges was proven beyond a reasonable doubt. The State put forth substantial evidence in addition to Libero's confession that these crimes had been committed.

Nancy's condition at the time she arrived at the hospital was definitive of the first requirement—that an injury occurred. The trauma injuries to Nancy's head were supportive of the assault injury. The condition in which Nancy had been left, with life-threatening injuries, supported the attempted murder charge. The State presented testimony of Dr. Rogers that Nancy had severe blunt trauma to her head, resulting in multiple fractures to her brain and skull, bruising of her brain, rupturing of her eyeball, and a small blood clot on her brain.

---

10. "Corpus" is the Latin word for body. *Black's Law Dictionary* 343 (6th ed.1990). "Delictum" is the Latin word for "[a] delict, tort, wrong, injury, or offense." *Id.* at 427. The term "corpus delicti" refers to

> [t]he body of a crime. The body (material substance) upon which a crime has been com-

mitted, *e.g.,* the corpse of a murdered man, the charred remains of a house burned down. In a derivative sense, the objective proof or substantial fact that a crime has been committed. *Id.* at 344.

The State also introduced physical evidence—the kiawe branch as the instrument used to cause the injuries to Nancy. In support of its contention that the kiawe branch was the instrument used to cause the injuries, the State presented photographs and testimony of Officer Hickle that showed the branch was found in the near vicinity of where Nancy was discovered. The State also presented Souki's testimony that he air dried the blood found on the kiawe branch. The use of the kiawe branch as the means of causing the injury and the physician's testimony that Nancy was struck multiple times established that the injury did not occur by accident or natural causes.

We conclude the State did establish the corpus delicti for the attempted murder and assault charges by evidence independent of Libero's confession and there was substantial evidence of sufficient quality and probative value on the record upon which the jury found Libero guilty as charged.

### B. CORPUS DELICTI FOR ATTEMPTED SEXUAL ASSAULT IN THE FIRST DEGREE WAS NOT SUPPORTED BY EVIDENCE INDEPENDENT OF LIBERO'S CONFESSION.

██ In order to support a charge of Attempted Sexual Assault in the First Degree, the State was required to present evidence that Libero intentionally engaged in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his knowingly subjecting another person to an act of sexual penetration by strong compulsion. *See* HRS §§ 705–500(b) & 707–730(1)(a).

The evidence establishing the corpus delicti for attempted sexual assault was limited to the extrajudicial confession of Libero. Libero's recorded confession, in which he confessed to taking off the bottom half of Nancy's clothes to have sex with her, was played to the jury. In addition, Detective Jakubczak testified that while speaking with Libero on November 24, 1998 at Libero's house, Libero informed the detective that after exercising on the beach he had come

across Nancy, who was covered with a bloody piece of clothing or a blanket and was wearing no clothing from the waist down. Detective Jakubczak also stated that Libero informed him while at the police station on December 1, 1998 that he had touched Nancy "affectionately" and had taken off her pants because he wanted to have sex with her, but "couldn't do it." However, no evidence of an attempted sexual assault of Nancy was found. When Nancy was found, she was fully clothed. Her pants were on, not off. There was no evidence, other than Libero's own extrajudicial statements, that Nancy's pants or the bottom half of her clothes were removed—much less removed by Libero.

We conclude that there was no evidence, independent of Libero's extrajudicial confession, of the corpus delicti of attempted sexual assault of Nancy by Libero. We therefore reverse Libero's conviction and sentence for Attempted Sexual Assault in the First Degree.

### C. SUFFICIENCY OF EVIDENCE FOR LIBERO'S SPECIFIC INTENT TO KILL.

██ Libero contends the evidence failed to prove he had the specific intent to kill. He contends the State did not meet its obligation to prove it was his "conscious object to cause such a result" as Nancy's death. The record does not support Libero's contentions.

The intent to kill is a required element of Attempted Murder in the Second Degree. HRS § 707–701.5(1). In this instance, the record contains substantial evidence that Libero had the specific intent to kill. *See Richie*, 88 Hawai'i at 33, 960 P.2d at 1241 (advising appellate courts to look not to whether guilt was "established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact"). " 'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Id.* (internal quotation marks and citation omitted).

██ The Supreme Court of Hawai'i has acknowledged that direct evidence rarely

proves a defendant's intent to kill; instead, circumstantial evidence and reasonable inferences that arise from the circumstances of the act are sufficient. *State v. Sadino*, 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982). Libero's intent to kill can be "read from his acts, conduct and inferences fairly drawn from all the circumstances." *Id.* at 430, 642 P.2d at 537. Evidence of the grave nature of the assault, Libero's inflicting multiple blows to Nancy's head with a heavy branch and leaving Nancy in an undeveloped area, was sufficient for the jury to reasonably infer that Libero intended to kill Nancy. *See State v. Ah Choy*, 70 Haw. 618, 624, 780 P.2d 1097, 1101–02 (1989) (intent to kill inferred from the nature and location of a wound and the weapon used).

Libero argues that other jurisdictions have held that a higher degree of proof is required to substantiate an attempt to commit murder as opposed to murder itself. Libero's reliance is misplaced. The cases he cites are significantly distinguished on their facts from the case at hand. *See People v. Mitchell*, 105 Ill.2d 1, 10, 85 Ill.Dec. 465, 473 N.E.2d 1270, 1274 (1984) (beating of child not indicative of intent to kill when mother later placed cool cloth on head of child and ultimately took child to hospital for injuries); *People v. Jones*, 184 Ill.App.3d 412, 430, 133 Ill.Dec. 295, 541 N.E.2d 132, 143 (1989) (beating of victim with gun insufficient to find intent to kill when gun could have been used as a firearm).

The head injuries inflicted on Nancy, the use of the kiawe branch, and the fact that Nancy was left in a dark, undeveloped area where she would not be discovered until morning are substantial evidence of sufficient quality and probative value that Libero had the specific intent to kill Nancy.

### D. JURY INSTRUCTIONS.

Libero argues that the circuit court should have issued merger and unanimity instructions to the jury and the jury instructions as to the sexual assault charge were incomplete, thus causing substantial prejudice to his case. Libero did not request the circuit court to give such instructions to the jury.

■ When determining if jury instructions caused substantial prejudice, we evaluate whether, "when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642 (internal quotation marks and citation omitted).

■ Libero contends the State failed to establish a prima facie case of separate conduct sufficient to warrant the charges of assault and attempted murder. He argues that since the evidence did not establish that these incidents were the result of separate conduct, he was entitled to jury instructions on merger.

While HRS § 701–109(1)(e) (1993) [11] does prohibit multiple convictions if the actions of the defendant constitute an uninterrupted, continuing course of conduct, our review of the record indicates that the assault and attempted murder did not stem from an uninterrupted course of conduct. In Libero's statements to police he acknowledged that he initially struck Nancy with the kiawe branch because she refused his advances, thus supporting the assault charge. He checked to see if Nancy was still breathing and then removed the bottom half of her clothes to have sex with her. He decided not to have sex with her. Nancy then got up, and Libero struck her again and left her. Libero, in his recorded confession, admitted to striking Nancy only once more after removing her clothes; however, Dr. Rogers testified that

---

11. HRS § 701–109(1)(e) (1993) reads as follows:
 **§ 701–109 Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:

 . . . .

 (e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

the nature of her subsequent injuries indicated she was struck at least three times.

The second attack, after the attempt to have sex, is indicative of an attempt to kill and thereby supportive of the attempted murder charge. The State fulfilled its obligation to prove that Libero committed "separate offenses under the law" by showing that Libero at one point intended only to harm Nancy and at another point intended to cause her death. *State v. Matias,* 102 Hawai'i 300, 305, 75 P.3d 1191, 1196 (2003). There was no plain error on the part of the circuit court in not giving the merger and unanimity instructions, which Libero argues on appeal should have been given.

■ Libero also asserts the jury instruction for the attempted sexual assault charge was incomplete because it did not follow Hawai'i Criminal Pattern Jury Instruction (HAWJIC) 14.02 [12] and "failed to provide the necessary element that 'Defendant was aware his conduct constituted strong compulsion.' " Libero did not make this objection to the circuit court. State's Instruction No. 24, as modified, read as follows:

> In Count Three of the Indictment, the Defendant, JAMES LIBERO, is charged with the offense of Attempted Sexual Assault in the First Degree.
>
> A person commits the offense of Attempted Sexual Assault in the First Degree if he intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial

step in a course of conduct intended to culminate in his commission of Sexual Assault in the First Degree.

There are two material elements of the offense of Attempted Sexual Assault in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about November 23, 1998, in the County of Maui, State of Hawaii, the Defendant, JAMES LIBERO, engaged in conduct which, under the circumstances as the Defendant believed them to be, was a substantial step in a course of conduct intended by the Defendant to culminate in the commission of Sexual Assault in the First Degree; and

2. That the Defendant engaged in such conduct intentionally.

Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit Sexual Assault in the First Degree.

A person commits the offense of Sexual Assault in the First Degree if he knowingly subjects another person to an act of sexual penetration by strong compulsion.

Libero contends the second paragraph of the above instruction should have read as follows (changed material underlined):

> A person commits the offense of Attempted Sexual Assault in the First Degree if he intentionally engages in conduct which, under the circumstances as he be-

---

**12.** In 2000, Hawai'i Criminal Pattern Jury Instruction (HAWJIC) 14.02 read as follows:

**14.02 ATTEMPT—PURPOSE TO CAUSE PROSCRIBED RESULT H.R.S. § 705–500(2) AND (3)**

[In Count *(count number)* of the Indictment/Complaint, the], [The] Defendant, *(defendant's name)*, is charged with the offense of Attempted *(specify substantive offense).*

A person commits the offense of Attempted *(specify substantive offense)* if he/she intentionally engages in conduct which, under the circumstances as he/she believes them to be, is a substantial step in a course of conduct intended or known to cause *(specify result of offense which is an element of the offense and any attendant circumstance with the required state of mind).*

There are *(specify number)* material elements of the offense of Attempted *(specify substantive*

*offense),* each of which the prosecution must prove beyond a reasonable doubt.

These *(specify number)* elements are:

1. That, on or about *(date)*, in the [City and] County of *(name of county)*, the Defendant engaged in conduct which, under the circumstances as Defendant believed them to be, was a substantial step in a course of conduct intended or known to be practically certain by the Defendant to cause *(specify result of offense which is an element of the offense);* and

2. That the Defendant engaged in such conduct intentionally. [and][sic]

\* *(3. Specify attendant circumstance with the required state of mind.)*

Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent·to commit *(specify substantive offense),* which is, *(state elements of substantive offense).*

lieves them to be, constitutes a substantial step in a course of conduct intended <u>or known to be practically certain to subject another person to sexual penetration and he is aware his conduct is by strong compulsion.</u>

Libero was charged under HRS § 705–500(1)(b),[13] which provides:

> § 705–500 **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
>
> . . . .
>
> (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

State's Instruction No. 24 tracked the language of HAWJIC 14.01,[14] which was the Hawai'i Criminal Pattern Jury Instruction for HRS § 705–500(1)(b). HAWJIC 14.02, which contained language Libero argues should have been given to the jury, was the instruction to be used for a charge filed under HRS § 705–500(2). Libero was not charged under HRS § 705–500(2); therefore, HAWJIC 14.02 was not the appropriate jury instruction in this case. There was no plain error in the circuit court giving State's Instruction No. 24 to the jury.

## E. SPEEDY TRIAL VIOLATION.

██ Libero contends his right to a speedy trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Hawai'i Constitution, was violated. Libero raises this argument for the first time on appeal. While recognizing the presupposition of the adversary system, that it is the responsibility of a party's counsel to protect the party's rights, the appellate court will apply the plain error standard of review to prevent the denial of fundamental rights. *Vanstory*, 91 Hawai'i at 42, 979 P.2d at 1068. It is clearly established that the "sixth amendment guarantee of the right to a speedy trial is a fundamental right given to a defendant in a criminal proceeding." *State v. O'Daniel*, 62 Haw. 518, 524, 616 P.2d 1383, 1388 (1980). We therefore review Libero's contention pursuant to the plain error standard.

To determine if Libero's right to a speedy trial was violated, we apply the four-part test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101. *State v. White*, 92 Hawai'i 192, 201–02, 990 P.2d 90, 99–100 (1999); *accord State v. Almeida*, 54 Haw. 443, 447, 509 P.2d 549, 551–52 (1973) (adopting the balancing test enumerated in *Barker*). In determining if a such a deprivation has occurred we consider: "(1) length of delay; (2) the reasons for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to

**13.** While the indictment does not specify that Libero was charged under subsection (1)(b) of the attempt statute, HRS § 705–500, it is clear from the wording of the indictment that this was the subsection under which he was charged.

**14.** In 2000, HAWJIC 14.01 read as follows:

**14.01 ATTEMPT–PURPOSE TO CULMINATE IN COMMISSION OF OFFENSE H.R.S. § 705–500(1)(b) and (3)**

[In Count *(count number)* of the Indictment/Complaint, the], [The] Defendant, *(defendant's name)*, is charged with the offense of Attempted *(specify substantive offense)*.

A person commits the offense of Attempted *(specify substantive offense)* if, he/she intentionally engages in conduct which, under the circumstances as he/she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his/her commission of *(specify substantive offense)*.

There are two material elements of the offense of Attempted *(specify substantive offense)*, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That, on or about *(date)* in the [City and] County of *(name of county)*, the Defendant engaged in conduct which, under the circumstances as the Defendant believed them to be, was a substantial step in a course of conduct intended by the Defendant to culminate in the commission of *(specify substantive offense)*; and

2. That the Defendant engaged in such conduct intentionally.

Conduct shall not be considered a substantial step unless it is strongly corroborative of the Defendant's intent to commit *(specify substantive offense)*.

A person commits the offense of *(specify substantive offense)* if *(define substantive offense)*.

the defendant." *White*, 92 Hawai'i at 201–02, 990 P.2d at 99–100.

### 1. Length of Delay.

"The length of the delay serves as a triggering mechanism to the *Barker* analysis." *State v. Nihipali*, 64 Haw. 65, 68, 637 P.2d 407, 411 (1981).

> Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Barker*, 407 U.S. at 530–31, 92 S.Ct. at 2192.

When Libero was indicted on December 4, 1998, the speedy trial clock began to run. *See White*, 92 Hawai'i at 202–03, 990 P.2d at 100–01 (holding that the period for calculating the delay commences on the day the indictment was filed). For over twenty months Libero remained in custody awaiting trial, which began on August 7, 2000. The Hawai'i Supreme Court has recognized that delays shorter than Libero's were sufficient to trigger the *Barker* analysis: *White*, 92 Hawai'i at 203, 990 P.2d at 101 (eleven-month delay was sufficient to trigger *Barker* analysis); *State v. Lau*, 78 Hawai'i 54, 62–63, 890 P.2d 291, 299–300 (1995) (six-month delay in DUI trials was sufficient to trigger analysis); *Almeida*, 54 Haw. at 448, 509 P.2d at 552 (seven-month delay was presumptively prejudicial). We therefore conclude that the delay of more than twenty months from indictment to the commencement of Libero's trial warrants an inquiry into the other *Barker* factors.

### 2. Reason for the Delay.

Libero was indicted on December 4, 1998. His initial trial date was set for March 15, 1999. On March 4, 1999, Libero filed a Motion to Continue Trial. Libero concedes that for the period from March 15, 1999 to the new trial date of June 28, 1999, he executed a limited waiver of his speedy trial rights. During a June 17, 1999 pretrial con-

ference, the circuit court continued the trial for the court's convenience. On June 24, 1999, the circuit court set the trial for October 4, 1999.

On September 15, 1999 Libero filed a Motion for Examination of Defendant with Respect to Physical or Mental Disease, Disorder, or Defect. On October 12, 1999, the circuit court filed its order granting Libero's motion for mental examination, suspending proceedings, and appointing three examiners. The circuit court filed an amended order, appointing two new examiners, on December 15, 1999. On March 30, 2000, the circuit court[15] found Libero fit to proceed and scheduled the trial for July 17, 2000. The trial was continued again to August 7, 2000. On July 14, 2000, Libero filed a limited waiver of his speedy trial rights from July 17, 2000 to August 7, 2000.

Of the more than twenty months from indictment to trial, all but nine months of delay were attributable to Libero. A delay longer than nine months did not result in prong two (the reason for the delay) being weighed in favor of the defendant. *White*, 92 Hawai'i at 203, 990 P.2d at 101 (holding that a period of eleven months, not attributable to the defendant, was insufficient to render prong two in favor of defendant); *compare with Barker*, 407 U.S. at 533–34, 92 S.Ct. at 2193–94 (holding that a four-year non-attributable delay was excessive, and therefore prong two weighed in favor of defendant), and *State v. Dwyer*, 78 Hawai'i 367, 371, 893 P.2d 795, 799 (1995) (determining that a thirty-two month delay was sufficient to allow prong two to weigh in favor of the defendant). A deliberate attempt to hamper a defense by causing delays should be heavily weighted against the prosecution versus a neutral reason like overcrowded courts. *Lau*, 78 Hawai'i at 63, 890 P.2d at 300 (citing *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192). In this case there is no evidence of a deliberate attempt by the State to delay the trial.

Because all but nine months of the delay were attributable to Libero and there is no indication the nine months of delay were

---

**15.** The Honorable Shackley Raffetto presided.

caused by the State, we conclude that this prong weighs in favor of the State.

### 3. Assertion of the Right to a Speedy Trial.

Libero did not demand a speedy trial. The United States Supreme Court has specifically emphasized "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

Because Libero did not assert his right to a speedy trial, this factor weighs in favor of the State.

### 4. Prejudice to Libero.

Three interests are protected by the speedy trial right: (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety, and (3) limitation of the possibility that the defense will be impaired. *White*, 92 Hawai'i at 204, 990 P.2d at 102.

In Libero's case the prejudice is clear, although the extent of the prejudice is not. Nancy was murdered by someone else prior to the beginning of the trial. "If witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Prior to her death, Nancy was unable to identify Libero as her attacker from a six-picture photo array. Nevertheless, the State was allowed to present testimony, through Detective Jakubczak, that the police investigation turned towards Libero based on a description from Nancy that her attacker was an "[a]ttractive looking Hawaiian, Hawaiian looking male, attractive, approximately 30 years of age, dark short hair and dark complexion." However, the circuit court instructed the jury that this testimony was "not to be considered by you as evidence of the truth of what Nancy Sirovetz said, but rather you are to consider them only to explain the police's subsequent actions during their investigation." Jurors are presumed to follow the instructions issued by the court. *State v. Knight*, 80 Hawai'i 318, 327, 909 P.2d 1133, 1142 (1996). Had Nancy been available as a witness, there is no indication in this record that she could

have offered any testimony that would have been helpful to Libero.

Twenty months in jail was of serious detriment to Libero. *See Barker*, 407 U.S. at 532, 92 S.Ct. at 2193 (observing that an accused who cannot obtain his release faces serious detriment, such as loss of job and disruption of family life). Prior to his incarceration, Libero had a job and a home that he shared with his girlfriend. Accordingly, we hold that this prong weighs in favor of Libero.

### 5. Conclusion on the Speedy Trial Claim.

Pursuant to the *Barker* analysis, we conclude that Libero was not deprived of his constitutional right to a speedy trial. While the prejudice prong of the *Barker* analysis weighs in favor of Libero, this prejudice is outweighed by the delay attributable to Libero and Libero's failure to demand a speedy trial. That the unavailability of Nancy as a witness caused the "possibility of prejudice" to Libero's defense does not support Libero's position that his speedy trial rights were violated. *Lau*, 78 Hawai'i at 65, 890 P.2d at 302 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986)).

### F. SUPPRESSION OF NOVEMBER 24, 1998 STATEMENT.

Libero contends his November 24, 1998 statement to police should have been suppressed pursuant to a hearing held by the circuit court on August 3, 2000. Libero contends the circuit court, in denying his motion to suppress statements, made erroneous findings and misapplied the law.

The record before us does not contain Libero's motion to suppress. Appellant bears the burden of providing the record. *See, e.g., Bettencourt v. Bettencourt*, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995); *Union Bldg. Materials Corp. v. The Kakaako Corp.*, 5 Haw.App. 146, 151, 682 P.2d 82, 87 (1984) (placing the burden on appellant to provide an adequate transcript upon which appellant must show error by reference to matters in the record). Libero did not meet his burden in providing an adequate record

to review the circuit court's denial of his motion to suppress.

 Furthermore, at the August 3, 2000 hearing Libero did not argue that his November 24, 1998 statement should have been suppressed. At that hearing, the following exchange took place between the circuit court and Libero's counsel:

> THE COURT: So you're only contesting the interviews of [Libero] on December 1st. I know there was a previous interview of [Libero] on November 24th.
>
> [DEFENSE COUNSEL]: That's correct. *We're not contesting the voluntariness of any statements made on November 24th.*
>
> THE COURT: Just the incidents that occurred on December 1st?
>
> [DEFENSE COUNSEL]: That is true, your Honor. Although I do believe that the Court is required to make a finding voluntary as regard to any statement made by [Libero].
>
> But as far as the defense position goes, we would only challenge the voluntariness of the statement made on December 1st.

(Emphasis added.) Additionally, Libero did not object to the admission of the November 24, 1998 statement during the jury trial. "[E]videntiary objections ... not raised during trial will not be considered on appeal." *Bailey v. Sanchez*, 92 Hawai'i 312, 316, 990 P.2d 1194, 1198 (App.1999) (footnote omitted).

### G. HEARSAY STATEMENTS AND TESTIMONY OF OTHER CRIMINAL ACTS.

 Libero contends the circuit court's admission of Detective Jakubczak's testimony of statements Nancy made to him describing a Hawaiian male constituted error because "the evidence was hearsay, overly prejudicial, and violated Libero's right to confrontation because [Nancy] would not be testifying." Additionally, Libero contends the circuit court abused its discretion in allowing Detective Jakubczak to testify on redirect that other homeless women had been beaten by fists in order to explain why the kiawe branch was initially overlooked.

 Nancy's description of her attacker was not hearsay because it was not admitted for the truth of the matter asserted. The record indicates Nancy's description was used to explain the subsequent conduct of the police during their investigation. The jury was instructed to that effect. It is presumed that juries follow the court's instructions. *Knight*, 80 Hawai'i at 327, 909 P.2d at 1142. Nor was Nancy's description such that it would cause substantial prejudice to Libero. The description provided to the police was of an "[a]ttractive looking Hawaiian, Hawaiian looking male, attractive, approximately 30 years of age, dark short hair and dark complexion." Other evidence placed Libero at the scene of the crime, including his own confession. Nancy's description of a Hawaiian male pales in significance in light of the other evidence placing Libero at Nancy's campsite.

 With respect to Detective Jakubczak's reference to other homeless women who had been beaten by fists, Libero contends this was inadmissible character evidence in violation of Hawaii Rules of Evidence (HRE) Rule 404(b).[16] Specifically he contends the "evidence had no probative value and inferred 'prior bad acts' evidence to the factfinder." This evidence was not character evidence under HRE Rule 404(b).[17] Rule 404(b) precludes evidence of other

---

16. Hawaii Rules of Evidence (HRE) Rule 404(b) provides in relevant part:

 **Rule 404 Character evidence not admissible to prove conduct; exceptions; other crimes.**
 . . . .
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

17. HRE Rule 404 Commentary instructs that "[w]hen offered for the specified purposes other than mere character and propensity, however, 'other crimes, wrongs, or acts' evidence may be admissible provided the Rule 403 test is met."

crimes or bad acts of the accused. The testimony of Detective Jakubczak was not evidence of other crimes or bad acts of Libero. The testimony was presented to explain why the kiawe branch was initially overlooked by the police.

## H. INEFFECTIVE ASSISTANCE OF COUNSEL.

■ Libero argues he was denied effective assistance of counsel in violation of the United States Constitution and Article I, Section 14 of the Hawai'i Constitution because his trial counsel failed to file a HRPP Rule 48 speedy trial motion; failed to present evidence at the motion to suppress hearing regarding Libero's "fingertip amputation, treatment and prescription medication" and their effect on his voluntary waiver of his rights; and failed to present evidence of Libero's mental health.

■ Defendant bears the burden of establishing an ineffective assistance of counsel by demonstrating: "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Richie*, 88 Hawai'i at 39, 960 P.2d at 1247. Customarily, a HRPP Rule 40 hearing is the

proper method to address ineffective assistance of counsel claims. *State v. Brantley*, 84 Hawai'i 112, 122, 929 P.2d 1362, 1372 (App.1996). *See also, Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). While it is permissible to entertain ineffective assistance of counsel claims for the first time on appeal, the record here is insufficiently developed to determine whether the facts alleged by Libero, if proven, would entitle him to relief. *State v. Silva*, 75 Haw. 419, 438–39, 864 P.2d 583, 592 (1993).

## IV.

We reverse the conviction and sentence of Libero on Count Three, Attempted Sexual Assault in the First Degree, and affirm the convictions and sentences for Count One, Attempted Murder in the Second Degree, and Count Two, Assault in the First Degree, without prejudice to Libero's filing a HRPP Rule 40 petition on his ineffective assistance of counsel claim.